**Gary DUNCAN, Plaintiff,**

v.

**Leander H. PEREZ, Jr., Defendant.**

**Civ. A. No. 69-7.**

United States District Court,
E. D. Louisiana,
New Orleans Division.

Oct. 20, 1970.

Alvin J. Bronstein, Cambridge, Mass., Donald Juneau, Shiprock, N. M., Stanley Halpin, New Orleans, La., for plaintiff.

Sidney W. Provensal, Jr., New Orleans, La., for defendant.

CASSIBRY, District Judge:

This action was brought pursuant to 42 U.S.C. § 1983, 28 U.S.C. § 1343(3), 28 U.S.C. §§ 2201–2202, and the equity jurisdiction of the court.

In October, 1966, plaintiff Gary Duncan was arrested in Plaquemines Parish, Louisiana (the Twenty-Fifth Judicial District) and was charged with cruelty to a juvenile in violation of La.Rev.Stat. § 14:93. Duncan, a Negro, was alleged to have slapped a white youth on the arm after breaking up a confrontation between four white boys and two Negro boys (both cousins of Duncan's) near the then recently integrated Boothville-Venice School.

Because his arrest was related to the racial tension which accompanied the federally ordered desegregation of

schools in Plaquemines Parish,[1] Duncan was concerned over his ability to secure a vigorous defense against the criminal charges lodged against him from among the attorneys practicing in the Parish. He retained instead Robert F. Collins, a black attorney practicing in New Orleans, and Richard B. Sobol, a civil rights attorney from the North.

On November 25, 1966, Collins and Sobol appeared for Duncan at his arraignment in juvenile court in Pointe a la Hache. They filed a motion to quash the information against plaintiff on the ground that, under Louisiana law, one of the elements of the crime of cruelty to a juvenile is a parental relationship between the defendant and the juvenile involved. The case was continued pending a hearing on the motion.

After the conference, an Assistant District Attorney advised the original complainants that the juvenile charge was probably invalid, and that an affidavit charging simple battery should be filed. This was done the same day, and the following day, i. e., the day after his appearance in court with Collins and Sobol, plaintiff was arrested for a second time.

When Duncan was first arrested on the juvenile charge, a bond of $1,000 was set in accordance with the suggested bond schedule in effect in the Parish. When he was arrested for the second time, the District Judge set bond at $1,500, or double the $750 figure for simple battery included in the suggested bond schedule. Shortly thereafter, the cruelty to juvenile charge was nolle prossed by the State.

On January 25, 1967, the simple battery charge against Duncan came to trial. All the witnesses at trial described an incident in which four white boys were standing facing two Negro boys on the side of the highway near the Boothville-Venice School, shortly after the end of the school day. The Negro boys were both cousins of Gary Duncan's. Duncan was driving by, saw the

confrontation, stopped his car, got out, instructed his two cousins to get into his car, returned to his car and drove off. During this time, Duncan touched one of the white boys on the arm. The only conflict in testimony concerned the nature of the touching. The witnesses for the state, three of the four white boys and a white onlooker, who was President of the private school association that had been established to avoid integration, testified that Duncan had slapped the white boy in a hostile manner. The witnesses for the defense, the two Negro youths and Duncan, testified that Duncan had touched the boy on the arm in a conciliatory gesture, while encouraging him to go home. The trial judge resolved the factual conflict against Duncan and found him guilty of simple battery. Duncan was sentenced to two months in prison and a $150 fine, with an additional twenty days in prison if the fine was not paid. Sentence in simple battery prosecutions was imposed eighty-four times in the Twenty-Fifth Judicial District Court between January, 1965 and January, 1970. In only fifteen of these was a prison term imposed that could not be avoided by the payment of an alternative fine. In only five did the sentence exceed that imposed on Duncan, and four of these involved an additional more serious charge against the defendant. In discovery proceedings in this court the state court trial judge testified that the following considerations affected his decision in sentencing Duncan:

"I think that this case and your [Sobol's] representation as a member of the Lawyer's Constitutional Defense Committee, you all found the proper forum, which was Plaquemines Parish, you all found the proper name, which was L. H. Perez, and also you found the proper time, the integration of the parish school system in the Parish of Plaquemines. You at no time, to my recollection of the case, attempted to defend this man of the charges, your sole attempt was to have

1. See United States v. Plaquemines Parish School Board, 291 F.Supp. 841 (E.D.La.)

the constitution of the state of Louisiana where it dealt with jury trials and misdemeanors, you wanted that declared unconstitutional, and that's the only thing you did, sir."

Although under state law, Duncan was entitled to bond pending review in the Supreme Court of Louisiana and although bond pending review was granted, after sentencing Duncan was immediately arrested for the third time and remained in prison until the new bond could be set. Review was denied by the Supreme Court of Louisiana on February 20, 1967, and on February 21, 1967, Sobol went to Pointe a la Hache to apply for a continuation of bond pending an appeal to the Supreme Court of the United States. Continuation of bond was denied but a new bond was set. Minutes after his meeting with the trial judge, Sobol was arrested and charged with unauthorized practice of law in violation of La.Rev.Stat. 37:213. The facts of the charge are fully discussed in this court's opinion in Sobol v. Perez, 289 F. Supp. 392 (E.D.La.1968). There, we found that the arrest of Sobol was made in bad faith and for purposes of harassment.

"This prosecution was meant to show Sobol that civil rights lawyers were not welcome in the parish, and that their defense of Negroes involved in cases growing out of civil rights efforts would not be tolerated. It was meant also as a warning to other civil rights lawyers and to Negroes in the parish who might consider retaining civil rights lawyers to advance their rights to equal opportunity and equal treatment under the Equal Protection Clause of the Fourteenth Amendment." 289 F.Supp. at 402.

This court enjoined the prosecution.

In the day or two following Sobol's arrest, Duncan and persons acting in his behalf tried on several occasions to post the new bond with the Sheriff's office. Each time they were told that the earlier bond was still valid and that no further bond need be posted. On February 22, 1967, Sobol v. Perez was filed in this court. On February 23, in what appears to be a special hearing held for this purpose, without notice to Duncan's counsel, the District Attorney, Leander H. Perez, Jr., the defendant here, informed the court that Duncan had not posted the bond set by the court in its meeting with Sobol on February 21, and asked that a warrant for Duncan's arrest be issued.

Late that night, Duncan was arrested from his home in Boothville and taken to the Pointe a la Hache prison. Although there is testimony in the record conflicting with Duncan's statement that he was ridiculed, frightened and insulted during his trip to the prison, all witnesses agree that the night-time arrest and transportation to the Parish Prison for failure to post bond were highly unusual.

After this, his fourth arrest, relatives of Duncan attempted to post a property bond in the amount of $1,500, the amount established by the District Judge. For twenty-four hours, the Sheriff's office maintained the position that the bond could be met only if property with *double* its assessed value was pledged. The Louisiana Code of Criminal Procedure, Art. 324, explicitly provides that bond can be met by posting property of an assessed value equal to the amount of the bond. The District Judge and the deputy sheriff in charge of the jail testified that the requirement that a double bond be posted was inconsistent with past practice in the Parish.

On May 20, 1968, Duncan's conviction was reversed by the Supreme Court of the United States, on the ground that Duncan had been denied trial by jury. The case was "remanded for further proceedings not inconsistent with this opinion." Duncan v. Louisiana, 391 U.S. 145, 162, 88 S.Ct. 1444, 1454, 20 L.Ed.2d 491. On July 22, 1968, this Court issued its decision enjoining the trial of Sobol on the unauthorized practice charge.

Shortly after the rendition of judgment, a motion was made by the plaintiffs in *Sobol* (one of whom was Dun-

can), asking that the Court's judgment be expanded to enjoin the retrial of Duncan on the simple battery charge. The motion was denied by the Court on the ground that plaintiffs by their pleadings had not placed this claim in issue.

On January 3, 1969, this suit was instituted against the District Attorney of the Twenty-Fifth Judicial District, seeking an injunction against the reprosecution of Duncan. The case was tried on June 8, 1970. At that time, the court received numerous depositions in evidence, as well as several stipulated exhibits. In addition, the court agreed to judicially notice all of the extensive record in the *Sobol* case. After a careful examination of this record, the court has concluded that plaintiff has sustained the heavy burden required for an injunction against a pending state criminal proceeding.[2]

On the basis of the evidence of record, the court has concluded:

*First,* that the proceeding against Duncan in state court is maintained by the defendant in bad faith and for purposes of harassment. The multiple arrests, the unusually high bond on the battery charge, the unusually high sentence on the battery conviction, the unlawful demand that double bond be posted, the arrest of Sobol, and the comments of the defendant and the state district judge, all taken together, established that these authorities are personally hostile to Duncan and have altered established principles of criminal procedure in an effort to punish Duncan for his exercise of federally secured rights.

*Second,* there is no legitimate state interest in the reprosecution of Duncan. Without attempting to resolve the disputed issue of whether Duncan slapped or simply touched the white youth on the arm, it is clear beyond dispute that any violation that may have occurred was so slight and technical as to be generally reserved for law school hypotheticals rather than criminal prosecutions. The white boy was not hurt and displayed no bruise minutes after the incident. *De minimus* "batteries" of this kind occur repeatedly in Plaquemines Parish and elsewhere and do not become the subject of criminal proceedings. The factors bearing on the questions of harassment, considered together with the nature of the conduct on which the charge is based, convince the court that the charge against Duncan would not have been prosecuted, and certainly not reprosecuted, were it not for the civil rights context out of which the case arose, for Duncan's selection of civil rights attorneys to represent him, and for the vigor of his defense.

*Third,* the reprosecution of Duncan would deter and suppress the exercise of federally secured rights by Negroes in Plaquemines Parish. The various stages of the *Duncan* and *Sobol* cases have been thoroughly publicized in the New Orleans papers, which the parties have stipulated are the only daily newspapers generally read by residents of Plaquemines Parish. Duncan has waged an unprecedented four year fight to avoid conviction and incarceration on the charges against him. Not only did the charge against him relate to the occa-

---

2. At the trial of this matter, plaintiff took the position that the collateral estoppel doctrine barred the introduction of evidence by the defendant, which would tend to contradict or disprove any of the facts found by this court in Sobol v. Perez. The court took the objection under advisement and permitted the introduction of all of defendant's evidence, pending a decision on the objection. Although the issue has been extensively briefed by both sides, the court has concluded that there is no necessity to decide that issue because the parties are in agreement that, at the very least, the court can judicially notice all the proceedings in *Sobol* (see Shuttlesworth v. City of Birmingham, 394 U.S. 147, 157, 89 S.Ct. 935, 22 L.Ed.2d 162 (1969); Wright v. City of Montgomery, 406 F.2d 867, 869, n. 5 (5th Cir. 1969)), and because the defendant, in his presentation in this matter, has not succeeded in disproving any facts found in *Sobol* which are relevant to the court's disposition of this case.

sional racial violence that accompanied the integration of the Boothville-Venice School, the civil rights overtones of the case were underscored by the participation of civil rights attorneys, by the appeal to the Supreme Court of the United States, and by the arrest of Sobol and the extensive proceedings which followed. If Duncan were required to face retrial, it would constitute an unmistakable message to Negroes in Plaquemines Parish that it is unprofitable to step outside familiar patterns and to seek to rely on federal rights to oppose the policies of certain parish officials. The destructive effect on the exercise of federal rights could not be corrected by Duncan's possible subsequent success in state or federal court.

"[T]he ultimate resolution of the issues in this case at the state level is not an adequate remedy  *  *  * [t]he mere fact of the prosecution produces the harm and irreparable injury." Sobol, 289 F.Supp. at 402.

Duncan can assert this injury for himself and for other Negro residents of the Parish. See NAACP v. Alabama, 357 U.S. 449, 459, 78 S.Ct. 1163, 2 L. Ed.2d 1488 (1958).

These findings warrant the issuance of an injunction against the retrial of Duncan. See Sobol v. Perez, 289 F. Supp. 392, 400 (E.D.La.1968); United States v. McLeod, 385 F.2d 734 (5th Cir. 1967); Dombrowski v. Pfister, 380 U.S. 479, 85 S.Ct. 1116, 14 L.Ed.2d 22 (1965); City of Greenwood v. Peacock, 384 U.S. 808, 829, 86 S.Ct. 1800, 16 L. Ed.2d 944 (1966).

The defendant has argued that this relief is barred by 28 U.S.C. § 2283, which provides:

"A court of the United States may not grant an injunction to stay proceedings in a State court except as expressly authorized by Act of Congress, or where necessary in aid of its jurisdiction, or to protect or effectuate its judgments."

In two recent cases, this court has had the occasion to consider the import of Section 2283. See Brock v. Schiro, 264 F.Supp. 330 (E.D.La.1967); Vick v. Schiro, 296 F.Supp. 173 (E.D.La.1969). On the facts of both cases, this court declined to issue an injunction against prosecutions pending in state courts, but explicitly recognized that where there is a "threat of irreparable injury clear and imminent" injunctive relief against proceedings pending in state court will be granted. Brock, supra, 264 F.Supp. at 337, citing Stefanelli v. Minard, 342 U.S. 117, 121, 72 S.Ct. 118, 96 L.Ed. 138 (1951); Douglas v. Jeanette, 319 U.S. 157, 164, 63 S.Ct. 877, 87 L.Ed. 1324 (1943).

" *  *  * [T]he congressional command [Section 2283] ought to be ignored only in the face of the most compelling reasons, but we have certainly been told by the Supreme Court that in those circumstances it may be disregarded, for its parentage discloses that it was not intended to be as absolute as it sounds." Baines v. City of Danville, 337 F.2d 579, 593 (4th Cir. 1964). See also Sheridan v. Garrison, 415 F.2d 699 (5th Cir. 1969); Machesky v. Bizzell, 414 F.2d 283 (5th Cir. 1969); Hulett v. Julian, 250 F. Supp. 208 (M.D.Ala.1966).

Shortly after this matter was filed, the defendant moved to dismiss on the ground that the relief sought is barred by Section 2283. The court denied the motion on the ground that the applicability or inapplicability of Section 2283 depends on the factual showing made by the plaintiff. For the reasons stated above, plaintiff has established to the satisfaction of the court that the retrial of Duncan at this time will cause irreparable injury to the exercise of federally secured rights by Negro residents of Plaquemines Parish. In light of this finding, Section 2283 presents no obstacle to the granting of relief.

The foregoing constitutes the court's findings of fact and conclusions of law in this case. Counsel for plaintiff will, within twenty days, file with the court and serve on opposing counsel a pro-

posed order. Counsel for defendants will be accorded ten days after receipt to file and serve objections or other comments respecting plaintiff's proposed order. Thereafter, an injunction in favor of plaintiff will issue.