Richard B. SOBOL, Gary Duncan and Isaac Reynolds, Plaintiffs,

v.

Leander H. PEREZ, Sr., Leander H. Perez, Jr., District Attorney for the Twenty-Fifth Judicial District of Louisiana, and Eugene E. Leon, Judge of the Twenty-Fifth Judicial District of Louisiana, Defendants.

**United States of America,
Plaintiff-Intervenor,**

State of Louisiana, John P. Dowling, William F. Wessel, the Criminal Courts Bar Asssociation, and Louisiana State Bar Association, Defendants-Intervenors.

Civ. A. No. 67-243.

United States District Court
E. D. Louisiana,
New Orleans Division.
July 22, 1968.

Alvin J. Bronstein, Cambridge, Mass., Anthony G. Amsterdam, Philadelphia, Pa., Nils R. Douglas, Robert F. Collins, Lolis Elie, New Orleans, La., for plaintiffs.

Sidney W. Provensal, Jr., New Orleans, La., for defendants.

Stephen Pollak, Asst. Atty. Gen., Washington, D. C., Louis C. LaCour, U. S. Atty., New Orleans, La., Owen M. Fiss, Hugh W. Fleischer, Lester N. Scall, Allen D. Black, Attys., U. S. Dept. of Justice, Washington, D. C., for plaintiff-intervenor.

Jack P. F. Gremillion, Atty. Gen., State of La., William P. Schuler, Henry J. Roberts, Jr., Asst. Attys. Gen., State of La., Thomas M. Brahney III, Sp. Counsel to the Atty. Gen. of La., for defendant-intervenor, State of Louisiana.

John P. Dowling, Walter D. Kelly, William F. Wessel, New Orleans, La., for defendants-intervenors, Criminal Courts Bar Assn., John P. Dowling and William F. Wessel.

Cicero C. Sessions, Alvin R. Christovich, Sr., Wood Brown III, New Orleans, La., for defendant-intervenor, Louisiana State Bar Assn.

Before AINSWORTH, Circuit Judge, and HEEBE and CASSIBRY, District Judges.

PER CURIAM:

Richard B. Sobol, Gary Duncan, and Isaac Reynolds brought this action for injunctive, class action and declaratory relief against the prosecution of Richard Sobol for the unauthorized practice of law in Louisiana.[1] Injunction is sought (1) to prevent the prosecution of Sobol under the Louisiana Unauthorized Practice Statutes [2] by the District Attorney

---

1. The action was brought pursuant to 42 U.S.C. § 1983, 28 U.S.C. § 1343(3), 28 U.S.C. §§ 2201–2202, and the equity jurisdiction of the court.

2. LSA–R.S. 37:213–214 provide:
   "§ 213. No natural person, who has not first been duly and regularly licensed and admitted to practice law by the Supreme Court of this state, no partnership except one formed for the practice of law and composed of such duly licensed natural persons, and no corporation or voluntary association except a professional law corporation organized pursuant to Chapter 11 of Title 12 of the Revised Statutes, shall:
   (1) Practice law;
   (2) Furnish attorneys or counsel or an attorney and counsel to render legal services;

of Plaquemines Parish for Sobol's representation of Duncan in a criminal case in the state district court of that parish; (2) to restrain enforcement of those statutes both in the pending prosecution of Sobol and by future arrest and prosecution of Sobol for the unauthorized practice of law; and (3) to obtain necessary incidental relief against the further harassment of the plaintiffs on the ground that the statutes under which prosecution is sought are unconstitutional, on their face and as applied to Sobol. It is also contended that the prosecution constitutes harassment of Sobol, denial of the rights of Duncan to counsel of his choice, denial of the right of Sobol to represent Duncan, and denial of the rights of a class allegedly represented by Reynolds, in contravention of the First, Sixth and Fourteenth Amendments. The defendants are Leander Perez, Sr., Leander Perez, Jr., the District Attorney of Plaquemines Parish, and Judge Eugene Leon, the District Judge who tried the Duncan criminal proceeding.

The United States intervened on behalf of plaintiffs to urge relief for them because it considered such relief vital to the national interest. Certain individual lawyers and the Criminal Courts Bar Association, the State of Louisiana, and the Louisiana State Bar Association intervened on behalf of defendants because of their interest in protecting and upholding the constitutionality of the Louisiana statutes condemning the unauthorized practice of law.

The position of the United States that Sobol's prosecution violates the Equal

(3) Hold himself or itself out to the public as being entitled to practice law;

(4) Render or furnish legal services or advice;

(5) Assume to be an attorney at law or counselor at law;

(6) Assume, use or advertise the title of lawyer, attorney, counselor, advocate or equivalent terms in any language, or any phrase containing any of these titles, in such manner as to convey the impression that he is a practitioner of law; or

(7) In any manner advertise that he, either alone or together with any other person, has, owns, conducts or maintains an office of any kind for the practice of law.

No person, partnership or corporation shall solicit employment for a legal practitioner.

This Section does not prevent any corporation or voluntary association formed for benevolent or charitable purposes and recognized by law, from furnishing an attorney at law to give free assistance to persons without means.

Any natural person who violates any provision of this Section shall be fined not more than one thousand dollars or imprisoned for not more than two years, or both.

Any partnership, corporation or voluntary association which violates this Section shall be fined not more than five thousand dollars. Every officer, trustee, director, agent or employee of a corporation or voluntary association who, directly or indirectly, engages in any act violating any provision of this Section or assists the corporation or voluntary association in the performance of any such violation is subject to the penalties prescribed in this Section for violations by a natural person. As amended Acts 1964, No. 357, § 1."

"§ 214. Except as provided in this Section, no person licensed or qualified to practice as an attorney at law or as an attorney and counsellor at law in any other state and temporarily present in this state shall practice law in this state, unless he has been first duly licensed to practice law by the supreme court of this state or unless he acts in association with some attorney duly licensed to practice law by the supreme court of this state.

Nothing in this Chapter prevents the practice of law in this state by a visiting attorney from a state which, either by statute or by some rule of practice accorded specific recognition by the highest court of that state, has adopted a rule of reciprocity that permits an attorney duly licensed and qualified to practice law in this state to appear alone as an attorney in all courts of record in the other state, without being required to be admitted to practice in such other state, and without being required to associate with himself some attorney admitted to practice in the other state.

Whoever violates any provision of this Section shall be fined not more than one thousand dollars or imprisoned for not more than two years, or both."

Protection Clause of the Fourteenth Amendment is based on two alternative theories: (1) that the arrest and prosecution of Sobol was a form of harassment, undertaken without basis in law or fact, for the purpose of deterring him and other lawyers similarly situated from helping to provide legal representation in civil rights cases; or (2) that, without regard to the purpose of the arrest and prosecution, it represents an unconstitutional application and construction of section 214 of Title 37 of the Louisiana Revised Statutes, because such an application and construction of the state statute deprives persons of a much needed source of representation in civil rights cases without serving any legitimate state purposes. This is particularly true, it is urged, because there is an inadequate number of Louisiana lawyers willing to represent litigants in civil rights cases. The United States asserts that the "chilling effect" of this prosecution on civil rights litigation will not be sufficiently curtailed by an injunction of the prosecution by this court on the basis of the first theory, and it urges the court to decide the case on the basis of the second theory so that we may more effectively curtail the alleged "chilling effect" of the prosecution by

(1) delineating the constitutional limits for the application of section 214;

(2) imposing a criminal intent requirement on the application of the criminal sanction of section 214;

(3) retaining continuing jurisdiction of the case so that interested persons can apply to this court to construe the meaning of the decree and the permissible constitutional limits of a state criminal action under section 214.

The defendants contend:

(1) that the court is expressly denied the authority to issue an injunction against a pending state prosecution by 28 U.S.C. § 2283;

(2) that the case should be dismissed for lack of jurisdiction because no substantial federal question is involved;

(3) that the prosecution of Sobol was not for the purposes of harassment;

(4) that the Louisiana statutes regulating the practice of law, LSA–R.S. 37:213–214, are constitutional.

Because the complaint seeking injunctive relief charged that the state statutes under which the prosecution was brought are unconstitutional on their face, and as applied to Sobol, the prayer for the convening of a three-judge court pursuant to 28 U.S.C. §§ 2281, 2284 was granted and this court heard the case intermittently from January 22 to February 7, 1968. The following facts and circumstances proved on the trial reveal how the serious constitutional issues arose:

Plaintiff Richard Sobol, an honor graduate of Columbia Law School, a member of the bars of the State of New York, the District of Columbia, the Supreme Court of the United States, the United States Court of Appeals for the Fifth Circuit, and the United States District Court for the Eastern District of Louisiana, but not of the State of Louisiana, first came to Louisiana in the summer of 1965, when he was an active member of the law firm of Arnold and Porter in Washington, D. C., to engage in volunteer work during his vacation time for the Lawyers Constitutional Defense Committee (LCDC). The LCDC is a New York charitable corporation formed in 1964 through the efforts of the American Civil Liberties Union, Congress of Racial Equality, American Jewish Congress, and other similar organizations to provide additional lawyers in the South to handle civil rights litigation growing out of the Civil Rights Act of 1964 where it was considered local counsel would not provide the necessary representation in civil rights cases. It has been active in civil rights litigation primarily in Mississippi, Louisiana, and Alabama.[3] It has two major areas of

3. The standing Committee on Professional Ethics of the American Bar Association has approved the activity of LCDC as "within the standards and practices of the American Bar Association."

emphasis. One is the affirmative suit seeking to obtain equal treatment and equal opportunity for Negroes, or more specifically, affirmative suits relating to school desegregation, equal employment, public accommodations and facilities, and voting. The second is the "civil-rights-context" suit which involves defending persons who have been charged with offenses arising out of civil rights demonstrations. LCDC associates with a law firm in the locale where it is offering legal representation in civil rights matters. In virtually all instances, it has been associated with Negro lawyers. In Louisiana, such a relationship for its work has been maintained since 1964 with the New Orleans law firm of Collins, Douglas and Elie, in which the partners are all Negroes.[4]

On August 2, 1966 Sobol became the LCDC staff attorney for the New Orleans office and brought his family to reside in New Orleans. He took a leave of absence from the Washington law firm and was still on leave of absence at the time of the trial. His original intention was to stay one year, but he extended that time to a second year, and his intention as stated at the time of the trial was to leave the state by October 1968. His representation of Duncan in Plaquemines Parish has the following background:

Prior to the 1966–67 school year a dual school system based on race was maintained in Plaquemines Parish. On August 26, 1966 the federal court entered an order which, among other things, allowed Negro students to attend the traditionally all-white schools. United States v. Plaquemines Parish School Board, Civil Action No. 66–71, E.D.La. 1966, 11 Race Rel.L.Rep.1764. Two of the Negro students who took advantage of that order were a nephew and a cousin of Gary Duncan. They started attending the formerly all-white Boothville-Venice School in the middle of September 1966, and encountered difficulties at that school because of their race.

In the course of the school day on October 18, 1966 these boys were threatened with physical violence by white students. When they left school there was a confrontation or exchange of words with four white boys within the vicinity of the school. Gary Duncan came upon this scene while driving his automobile to Boothville. His attention was drawn to this gathering because of a congregation of white men who were watching the boys. Gary Duncan stopped to ask his relatives what was happening. The cousin and the nephew stated that the white boys were attempting to start a fight with them. While the two Negro boys were getting into Gary Duncan's car or were actually already inside, Duncan touched Herman M. Landry, Jr., one of the white boys. Duncan then drove off with the Negro boys.

Bert Latham, president of the Boothville-Venice Private School Association which had been set up in response to the desegregation order affecting the public school system, was one of the white adults who was observing this scene. He immediately called the sheriff's office. Several minutes later a deputy sheriff stopped Gary Duncan's car and took him back to the scene of the incident. After interviewing the white boys and examining Landry, the deputy sheriff told Duncan that he did not believe that he had struck the boy and released him.

Three days later, on October 21, 1966, Gary Duncan was arrested and charged with cruelty to juveniles under LSA–R. S. 14:93. The charge was based upon the incident of October 18, 1966. He was released from jail only upon posting a $1000.00 bond. This was the first of four times Gary Duncan was arrested before he exhausted his right to appeal.

At this time Gary Duncan was 20 years old. He was earning about $65.00

---

4. LCDC's major litigation work in Louisiana has been in the Parishes of Claiborne, Concordia, Jackson, Lafayette, Madison, Ouachita and Webster. It consists of practice in state and federal courts.

a week, was married and had a baby. Following his release, his parents, Mr. and Mrs. Lambert R. Duncan, came to the LCDC offices in New Orleans where they conferred with Richard Sobol. He told them that it would be necessary for Gary Duncan and Duncan's witnesses to meet with him and some member of the firm of Collins, Douglas and Elie. Several days later, Sobol and Robert F. Collins met with Gary Duncan and his witnesses and decided to take the case. They had a very heavy case load at the time, and they realized that this case in Plaquemines Parish, with the anticipated trips there and the likelihood of appeal, would involve a substantial commitment of resources. They also realized that the penalty was not severe and that there would be neither compensation nor reimbursement for expenses. However, they took the case because of the context in which it arose. To them, the arrest and prosecution was nothing more than a form of harassment undertaken in retaliation for the fact that Gary Duncan's relatives chose to go to the school previously reserved exclusively for whites.

Sobol then proceeded with his representation of Duncan. The trial on the cruelty to a juvenile charge against Gary Duncan was set for November 21, 1966. On that day Collins and Sobol appeared at the proceedings, which were held in the chambers of Judge Eugene E. Leon, Jr., in accordance with the general procedure for juvenile matters. Also present were the Judge, Gary Duncan, the Assistant District Attorney, Daryl V. Bubrig, and a court attaché. Collins introduced Sobol as an attorney from Washington, D. C., whom he wished to have associated with him on the case. Sobol and Collins offered a motion for a bill of particulars and a motion to quash the indictment, which was in part based upon the argument that the cruelty to a juvenile statute required the defendant to have some parental control or supervision over the injured child, which Gary Duncan, a Negro, obviously did not have over Herman Landry, a white. A hearing was set on those motions for January 4, 1967. Immediately following the proceeding in chambers Bubrig spoke with the parents of Herman Landry and told them that the cruelty to a juvenile charge might not be sustainable because of the motion to quash presented by Duncan's attorneys.

On the same day, November 21, 1966, Mrs. Herman M. Landry signed an affidavit charging Gary Duncan with simple battery based upon the same incident of October 18th. On November 25, 1966 Gary Duncan was arrested for a second time. This simple battery charge was based upon the same facts charged in the alleged juvenile offense. In order to be released he was required to post a second and higher bond for $1500.00.

Gary Duncan was arraigned on the simple battery charge on December 7, 1967. Duncan appeared alone at that arraignment and entered a plea of not guilty to the charge on the advice of Sobol.

The motions relating to the juvenile charge, which had been previously presented by Collins and Sobol, were scheduled to be heard on January 4, 1967. Sobol appeared alone to argue those motions on that date. When the case was called, Bubrig informed judge Leon that he wished to nol-pros the cruelty to a juvenile charge, and the court permitted him to do so.

On January 25, 1966 the simple battery charge was tried before Judge Leon. Sobol appeared alone as counsel for Gary Duncan. This time the State was not only represented on this misdemeanor charge by Bubrig, but also by his superior Leander H. Perez, Jr., the District Attorney. Sobol filed a demand for a jury trial, which was denied. At the close of the evidence Judge Leon rendered a guilty verdict and sentencing was set for February 1, 1967. On that date the court imposed the sentence of 60 days in jail and $150.00 fine.

After imposing the sentence Judge Leon advised Sobol that he did not want any lawyer associated with Lolis Elie

practicing criminal law in his court so long as Elie was an assistant district attorney in New Orleans in view of the provisions of the Louisiana Code of Criminal Procedure which had gone into effect on January 1, 1967.[5] Sobol, while agreeing to the request of the court, explained his view that the statute did not interrupt legal representation which had begun prior to January 1, 1967, as in the Duncan case, where the trial had been originally set for December 21, 1966.[6]

At no time during the course of the proceedings on that date or on any prior date did the District Judge, Bubrig or District Attorney Perez make any statement to Sobol in regard to his non-membership in the Louisiana Bar. Perez, however, did—on some undisclosed date —institute an investigation of Sobol, which was presumably undertaken to show when Sobol arrived in Louisiana, that he lived with his family in a rented apartment, and that he was not a member of the Louisiana Bar. For example, he made inquiries of the Southern Bell Telephone Company in New Orleans and New Orleans Public Service to determine when Sobol had received telephone, electricity, and gas installation at his apartment in New Orleans. He also received oral and written confirmation from the office of the Louisiana State Bar Association that Sobol was not admitted to the Louisiana Bar.

After the sentencing of Gary Duncan, Sobol gave notice of his intention to apply to the Supreme Court of Louisiana for a writ of certiorari based upon the denial of his request for a jury trial. Judge Leon set a new bond of $1500.00

pending the disposition of the application to the Supreme Court of Louisiana. Gary Duncan was arrested for a third time and stayed in jail for a few hours that night, pending the posting of the new bond.

On February 20, 1967 the Supreme Court of Louisiana denied the writ of certiorari.[7] On February 21, 1967, after receiving notice of the action of the Court, Sobol called Judge Leon for an appointment so that the bond could be continued pending an appeal to the United States Supreme Court. Judge Leon's secretary advised him that the Judge would be available until noon of that day. After this telephone call from Sobol, Judge Leon told Bubrig that Sobol was coming to the courthouse on that day. Bubrig telephoned Perez, the district attorney, who was at his office in St. Bernard Parish. Perez signed a bill of information charging Sobol with practicing law without a license. Bubrig requested and was granted a hearing in open court on that morning, at which he filed the bill of information, and Judge Leon issued a bench warrant for the arrest of Sobol.

Sobol met with the Judge, who set a new bond of $1500.00 for Gary Duncan pending the appeal to the United States Supreme Court. Shortly after leaving the Judge's chambers and while still in the courthouse Sobol was arrested and charged with practicing law without a license. Sobol was incarcerated in the Plaquemines Parish Prison for approximately four hours. He was fingerprinted and photographed several times, his belt and tie were taken away, and his

---

5. LSA–C.Cr.P., Art. 65, provides:
   "It is unlawful for the following officers or their law partners to defend or assist in the defense of any person charged with an offense in any parish of the state:
   (1) Any district attorney or assistant district attorney; or
   (2) The attorney general or any assistant attorney general."

6. The Committee on Professional Ethics and Grievances of the Louisiana State Bar Association investigated this matter on the basis of a complaint from the attorney for the defendants and found that there was no unethical conduct.

7. The United States Supreme Court reversed the conviction on May 20, 1968 and ordered a jury trial. Duncan v. Louisiana, 391 U.S. 145, 88 S.Ct. 1444, 20 L.Ed.2d 491.

brief case containing all the Duncan case papers was taken over his objection. Bail was set at $1500.00, without his ever appearing before the Judge in regard to it, and Sobol was released upon posting that bond later in the day on February 21, 1967.

Leander H. Perez, Jr., and his attorney in this case, Sidney Provensal, Jr., sent copies of the bill of information and letters to one or more district attorneys, in parishes where Sobol had represented clients for their "consideration," as well as to obtain information regarding Sobol's legal representation.

On February 21 Judge Leon issued another bench warrant, this time for the arrest of Gary Duncan. The Judge based this action on the theory that the denial of the writ of certiorari by the Supreme Court of Louisiana cancelled the previous bond on the simple battery charge. On February 23, 1967 Gary Duncan was arrested for the fourth time. Bond was set again for $1500.00. This time he was jailed for approximately 24 hours because the Plaquemines Parish Sheriff's office refused to release Duncan on a surety bond unless the evaluation of the surety bond was double that of the $1500.00 bond. The Sheriff's office maintained that position for a day, even though it was contrary to the past practice of that office with respect to the three prior arrests of Duncan. Donald Juneau, an attorney with LCDC, went to Pointe-a-la-Hache in an attempt to secure his release, but was unsuccessful and returned to New Orleans. Finally the Sheriff's office reverted to its past practice and allowed Duncan's release on the basis that the bond requirement was met by a surety bond with an evaluation equivalent to the bond. In the meantime this proceeding was commenced on February 22, 1967.

## I. RIGHT TO INJUNCTIVE RELIEF —JURISDICTION

The initial question to be determined in regard to the right to injunctive relief against this prosecution is the effect of 28 U.S.C. § 2283 on this court's power to grant such relief.[8] This issue was raised by defendants in Motions to Dismiss and for Summary Judgment and is reurged after trial on the merits.

The policy of this statute, which is to prevent conflict between federal and state courts, operates in a much more compelling way when litigation of private parties threatens to draw the two judicial systems into conflict than when it is the United States which seeks injunction to prevent threatened irreparable injury to a national interest. Leiter Minerals, Inc. v. United States, 352 U.S. 220, 77 S.Ct. 287, 1 L.Ed.2d 267; United States v. Wood, 295 F.2d 772 (5 Cir. 1961). The interpretation excluding the United States from coverage of the statute in *Leiter Minerals* can justifiably be extended to the instant case. The United States represents that the national interest of obtaining equal opportunity and equal treatment for Negroes, which in this case is to assure adequate legal representation in civil rights cases, requires the issuance of an injunction in this case because the arrest and prosecution of Sobol for representing a Negro in a civil rights case in Plaquemines Parish, Louisiana violates the Equal Protection Clause of the Fourteenth Amendment. The Government explains that its interest is not so much to protect the rights of the individual who is being prosecuted, but to protect the rights of other persons who are not parties to the state prosecution but who are, nevertheless, significantly affected by the prosecution—the rights of Negroes and civil rights workers to obtain adequate legal representation in civil rights cases.

---

**8.** 28 U.S.C. § 2283 provides:

"A court of the United States may not grant an injunction to stay proceedings in a state court except as express-ly authorized by Act of Congress, or where necessary in aid of its jurisdiction, or to protect or effectuate its judgments."

**400**

■ Although the *Leiter Minerals* rule was laid down in a case where the United States was the plaintiff, we agree with the Government that the underlying reason for it—the assertion of a national interest—would justify extending that rule to this case where the Government is an intervenor for that purpose. What is important is that the United States is a party to the law suit, asserting a national interest and seeking relief against a state court proceeding on the basis of that interest, and not whether its technical posture is plaintiff or plaintiff-intervenor.

■ The defendants urged as a ground for a Motion to Dismiss that the court lacks jurisdiction because no substantial federal question is involved in this case, relying on Hackin v. Arizona, 389 U.S. 143, 88 S.Ct. 325, 19 L.Ed.2d 347, wherein the Supreme Court of the United States dismissed an appeal from a conviction for unauthorized practice of law in the state courts for lack of a substantial federal question. We denied the Motion to Dismiss, but defendants re-urge the contention. The issues in this case are so different from those in the *Hackin* case, reported in 102 Ariz. 218, 427 P.2d 910, that we do not regard it as decisive here. The issues here do present a substantial federal question.

## II. GROUNDS FOR INJUNCTION

■ The second question for the court's determination is whether equitable grounds for injunctive relief exist in the circumstances of this case. The plaintiffs and the intervenors, the United States and the Louisiana State Bar Association, agree that injunctive relief can be granted in this case without reaching the constitutional attacks on the state statutes. They contend that, apart from the issues relating to the constitutionality of the statutes, injunctive relief may be granted because the arrest and prosecution of Sobol was a

form of unconstitutional harassment, undertaken without basis in law or fact, for the purpose of deterring him and other lawyers similarly situated from helping to provide legal representation in civil rights cases, and to deter Negroes like Duncan from seeking their representation. We have concluded, under the circumstances of this case, that this was an unlawful prosecution which was undertaken for purposes of such harassment, which served no legitimate interest of the State, for which no adequate remedy at law exists in the state courts, and which causes irreparable injury to Gary Duncan and other Negroes in need of representation in civil rights cases. See United States v. McLeod, 385 F.2d 734 (5 Cir. 1967); Dombrowski v. Pfister, 380 U.S. 479, 85 S.Ct. 1116, 14 L.Ed.2d 22 (1965); City of Greenwood, Mississippi v. Peacock, 384 U.S. 808, 829, 86 S.Ct. 1800, 16 L.Ed.2d 944 (1966).

■■ This conclusion makes unnecessary our consideration of the attacks on the statutes. Courts are reluctant to reach the issue of a statute's constitutionality if there is any other basis for decision.[9] Furthermore, the State has a legitimate interest to regulate the practice of law, and there has been no previous official interference elsewhere in the state with out-of-state attorneys engaged in civil rights litigation.

■ Sobol's representation of Duncan was not unauthorized practice of law under LSA–R.S. 37:213–214. Essentially section 213 provides that no natural person, who has not first been duly and regularly licensed and admitted to practice law by the Supreme Court of Louisiana, shall practice law in the state. Section 214 qualifies this in one way, among others, by providing that no person licensed or qualified to practice law in another state and temporarily present in Louisiana shall practice law in Louisiana unless he acts in association with some

9. Communist Party, U. S. A. v. Catherwood, 367 U.S. 389, 81 S.Ct. 1465 (1961); Rosenberg v. Fleuti, 374 U.S. 449, 83 S. Ct. 1804, 10 L.Ed.2d 1000 (1963); Chandler v. Garrison, March 11, 1968, 286 F.Supp. 191 and cases therein cited.

attorney duly licensed to practice law by the Supreme Court of the state. Perez, the District Attorney, takes the position that his charge in the information that Sobol "being a natural person, who had not first been duly and regularly licensed and admitted to practice law by the Supreme Court of this state, did practice law" is under section 213, but he does not contend that the charge would be justified if Sobol had complied with the qualifications in section 214 of being "temporarily present" in the state and acting "in association with" Louisiana counsel.

Sobol was temporarily present in the state. He did not then, and does not now, have any intention of remaining in the state permanently. He was in association with local counsel when Collins of Collins, Douglas and Elie went with him to the Plaquemines court and introduced him as a lawyer from Washington, D. C., associated with him in the case. The defendants attempted to reflect on the formal validity of the association by evidence that Judge Leon had required written motions for association in other cases, and that other judges required local counsel to be present at all times. Defendants failed, however, to prove that any such actual requirements for association were made by the Judge in this particular case. The prosecution was therefore without basis in law or fact.

The Louisiana State Bar Association, intervenor, agrees that Sobol was temporarily present in the state and was in association with local counsel. The Bar Association is an integrated bar, membership of which is required for every attorney licensed to practice law in Louisiana, and it was formed as a corporation pursuant to authority for its creation and regulation under the rule-making power of the Supreme Court. LSA–R.S. 37:211. Article 12, section 9 of its Articles of Incorporation [10] is a comparable provision to section 214 (ex-cept that it has no criminal penalty), and contains the same phrases, "temporarily present" and "in association with."

The circumstances surrounding the arrest and charge against Sobol, and the course of the Duncan case, convince us that Sobol was prosecuted only because he was a civil rights lawyer forcefully representing a Negro in a case growing out of the desegregation of the Plaquemines Parish school system. The attitude in this parish toward realization by Negroes of their civil rights is well known to this court. See United States v. Plaquemines Parish School Board, supra. District Attorney Leander Perez, Jr., stated publicly in 1965 that, if any known agitator were to appear in Plaquemines Parish, his mere presence would amount to a disturbance of the peace, since he was an outsider.

Several Negro lawyers testified as to their unwillingness or reluctance to go to Plaquemines Parish in a civil rights case.[11] The experiences of other Negro lawyers who have gone to that parish explain this feeling. Louis Berry recounted in his deposition how he went with another attorney to Plaquemines Parish in the early 1950's to address a public meeting in connection with a voting case. The two attorneys received word that state troopers were on their way to break up the meeting, and they left hurriedly.

Earl Amadee and A. M. Trudeau, Jr., two Negro attorneys from New Orleans, went to Plaquemines Parish in the summer of 1961, at the request of the National Association for the Advancement of Colored People, to represent a large group of Negroes who had been arrested in a Saturday night raid on a bar in the parish. They were met with an attitude of hostile resentment of their presence, threatened as to how they would be "taken care of" if they caused any trouble, and, in effect, compelled to leave the parish.

10. LSA–R.S., vol. 21A, p. 147.

11. There are no Negro lawyers in the parish.

We are impressed most strongly by the fact that Sobol was charged and arrested without a word having been said to him by the court or the district attorney to indicate to him that he was practicing law improperly. Remanding him to the jail, removing his personal effects, photographing him and setting bail without having him appear before the judge are so out of keeping with what would normally be done to a person of Sobol's professional status that they can only be interpreted as harassment.

There were less drastic remedies available, as attested by officials of the State Bar Association, if the local officials considered that Sobol had transcended the visiting attorney privilege, such as the civil procedures usually employed by the Committee on Unauthorized Practice of the Law of the State Bar Association to insure that visiting lawyers act within the scope of the visiting privilege. Instead of resorting to these procedures, the district attorney gave prominence and importance to the criminal prosecution by writing other district attorneys where Sobol had also practiced to call their attention to the basis of his prosecution of Sobol. This prosecution is so unusual that, according to attorneys who testified in the case, the statute to their recollection had never previously been invoked against a visiting attorney.

This prosecution was meant to show Sobol that civil rights lawyers were not welcome in the parish, and that their defense of Negroes involved in cases growing out of civil rights efforts would not be tolerated. It was meant also as a warning to other civil rights lawyers and to Negroes in the parish who might consider retaining civil rights lawyers to advance their rights to equal opportunity and equal treatment under the Equal Protection Clause of the Fourteenth Amendment.

The ultimate resolution of the issues in this case at the state level is not an adequate remedy in our opinion. The mere fact of the prosecution produces the harm and irreparable injury which the United States seeks to avoid to protect the national interest. Injunctive relief from this prosecution is appropriate.

Since defendant Leander Perez, Sr., no longer held any official office in the parish at the time of trial, the defendants have asked that he be dismissed from the case inasmuch as he is without legal authority to prosecute. We have concluded to do so after careful study of his lengthy deposition and considering his affirmative denial, without countervailing evidence, that he was in any wise involved in or knew about Sobol's arrest or prosecution.

The same request is made on behalf of the defendant Judge Eugene Leon, since he is not a prosecuting officer in the parish. We have determined that he should be dismissed for that reason and because we would not presume that a member of the judiciary would use his office unlawfully to harass parties or counsel.

The defendants and the intervenor, Louisiana State Bar Association, request that the plaintiff Isaac Reynolds be dismissed from the case because he made no appearance at the trial and no mention is made of him in the post-trial briefs of plaintiffs or intervenor United States. Under these circumstances the Court concludes that the action has been abandoned as to him.

Since the case may be disposed of without reaching the serious constitutional questions as to the Louisiana statutes raised by the plaintiffs and plaintiff-intervenor, the three-judge statutory court is hereby dissolved and the case returned to Judge Fred J. Cassibry from whom the matter initiated, for further handling. Cf. McWood Corporation v. State Corporation Comm. of N. M., D. C., D.N.Mex., 1965, 237 F.Supp. 963 (D.N.M.1965); Wright on Federal Courts, p. 164.

CASSIBRY, District Judge.

I hereby adopt the above and foregoing Per Curiam opinion as my own findings of fact and conclusions of law in this case, and order the issuance of judgment in accordance therewith.