**Walter SHERIDAN and Richard Townley, Appellants,**

v.

**Jim GARRISON, Individually and as a District Attorney for the Parish of Orleans, Etc., Appellee.**

**No. 25516.**

United States Court of Appeals Fifth Circuit.

Aug. 13, 1969.

Rehearing Denied Sept. 16, 1969.

Milton E. Brener, Harry McCall, Jr., Edward M. Baldwin, New Orleans, La., Herbert J. Miller, Jr., Washington, D. C., H. Richard Schumacher, New York City, for appellants.

James L. Alcock, Mrs. Louise Korns, Numa Bertel, Jr., James J. O'Connor, Asst. Dist. Attys., New Orleans, La., for appellee.

Before THORNBERRY and DYER, Circuit Judges, and FISHER, District Judge.

THORNBERRY, Circuit Judge:

This appeal concerns first amendment rights. Appellants are asking for an injunction under the Civil Rights Statute, Rev.Stat. § 1979 (1875), 42 U.S.C. § 1983 (1964), to protect their right of free speech, which they claim is being abridged by a pending criminal prosecution brought against them by appellee in Orleans Parish, Louisiana. The district court entered summary judgment for appellee because it found that the Anti-Injunction Statute, 28 U.S.C. § 2283 (1964), barred the relief prayed for and that appellants had not in any event alleged such extreme circumstances as to justify federal intervention under Dombrowski v. Pfister, 1965, 380 U.S. 479, 85 S.Ct. 1116, 14 L.Ed.2d 22. In light of the recent decisions of this Court in Machesky v. Bizzell, 5th Cir. 1969, 414 F.2d 283, and Dawkins v. Green, 5th Cir. 1969, 412 F.2d 644, we reverse and remand the case for an evidentiary hearing.[1]

---

1. Both *Machesky* and *Dawkins* were decided by this Court after the district court rendered its decision in the case at bar. Notwithstanding the result to which these cases lead us here, the excellent opinion of the trial judge has been of inestimable aid in the formulation of our opinion in this case.

The facts that form the background of this case are well known. Appellee is the District Attorney for Orleans Parish. Both before and after the commencement of this litigation, he was conducting an investigation into the assassination of President Kennedy. Appellants, who are both television newsmen, covered the investigation as news reporters and participated in the broadcast of a television program critical of the District Attorney's conduct of the investigation. NBC broadcast this program on June 19, 1967. Shortly thereafter, on July 7, 1967, the District Attorney filed an information that charged appellant Walter Sheridan with bribing a witness in the investigation, and on July 11 he filed three informations that charged appellant Richard Townley with bribing and intimidating witnesses. On August 10, 1967, *after* these informations had been filed to begin the prosecutions but *before* any trial or hearing on either case had begun, appellants filed their complaint in federal district court.

The complaint alleged that the charges against the appellants were totally lacking in substance and that the District Attorney knew them to be so lacking. It further alleged that the charges were filed not for "legitimate purposes of good-faith prosecution, but rather in furtherance of the [District Attorney's] scheme of harassment and intimidation of the [appellants]," and that this prosecution was part of a broad plan to intimidate those who disagree with the District Attorney's conduct as a public official. Read most favorably to the appellants, the complaint, record, and appellants' affidavits would indicate that the District Attorney has subpoenaed and by use of subpoenas attempted to intimidate many of those who executed affidavits on appellants' behalf, that he has threatened to "get" appellant Sheridan, that he has attempted to have appellants physically beaten, that he has suppressed evidence tending to show the charges false, and that he has not prosecuted others for bribery when convincing evidence against them was presented to him because they were favorable to him or at least not critical of him. In addition, affidavits of other newsmen, including reporters for NBC, *Life* Magazine, and *Newsweek* Magazine, indicate that prosecution of the criminal suits against appellants would have a "marked inhibiting effect" on news coverage of the District Attorney's investigation.

There are two major issues in this appeal. First, there is the question whether § 2283, the Anti-Injunction Statute, is a bar to the relief here prayed for. The second issue is whether the case, on the facts as pleaded and as shown by appellants' affidavits, was a proper one for summary judgment. We take up the issues in this order.

## I. THE EFFECT OF THE ANTI-INJUNCTION STATUTE

The Anti-Injunction Statute, § 2283, states as follows: "A court of the United States may not grant an injunction to stay proceedings in a State court except as expressly authorized by Act of Congress, or where necessary in aid of its jurisdiction, or to protect or effectuate its judgments." Section 1983, the Civil Rights Statute, provides, on the other hand, that every person who causes a citizen of the United States to be deprived of his rights under the federal Constitution and laws "shall be liable to the party injured in an action at law, suit in equity, or other proper proceeding for redress." This statute thus authorizes the issuance of an injunction in some cases to protect the exercise of civil rights. Dombrowski v. Pfister, 1965, 380 U.S. 479, 85 S.Ct. 1116, 14 L.Ed.2d 22. Our task here is to resolve the conflicting implications of § 1983 and § 2283 in light of the first amendment freedoms involved.

### A. *The Comity Nature of Section 2283 in the First Amendment Context*

We begin, as did this Court in Machesky v. Bizzell, by eliminating the question whether § 1983 or *Dombrowski* creates an "express exception" to § 2283,

because we reach our decision on the narrower basis of the comity nature of 2283 itself.

 The decisions of the Supreme Court, and the decisions of the federal courts in general, provide only a vague guide to our determination. In Dombrowski v. Pfister, the most important of the cases granting relief of the type requested here, the Supreme Court was not faced with the problem of § 2283 because of the peculiar facts of the case. *Dombrowski* concerned an action brought under § 1983 to enjoin the enforcement of a Louisiana subversive activities statute which plaintiffs alleged was an unconstitutional infringement on their first amendment rights. Section 2283 was eliminated from consideration because Louisiana state officials had explicitly and publicly stated their intention to enforce the subversive activities statute against the plaintiffs, who were consequently apprised of the probability of prosecution in advance. Thus they were able to file their suit and to have the federal district court issue a temporary restraining order *prior* to the filing of any papers commencing criminal proceedings in the Louisiana courts. The Supreme Court held that, in light of the defendants' bad faith, the presence of the unconstitutionally broad subversive activities statute effectively denied the plaintiffs their right of free speech, because "the threat of sanctions may deter * * * almost as potently as the actual application of sanctions." It went on to develop the now-famous metaphor of the "chilling effect" on free speech that is one of the requirements for the availability of *Dombrowski* relief: "The chilling effect upon the exercise of First Amendment rights may derive from the fact of the prosecution, unaffected by the prospects of its success or failure." Dombrowski v. Pfister, *supra*, 380 U.S. at 486–487, 85 S.Ct. at 1120–1121.

Because of this chilling effect, which would have constituted irreparable injury to the plaintiffs, the *Dombrowski* Court concluded, first, that it had jurisdiction to grant the injunction requested and, second, that equitable abstention from deciding the case would be improper. In so holding, the Court deviated from a long line of cases, beginning with R. R. Comm'n of Texas v. Pullman Co., 1941, 312 U.S. 496, 501, 61 S.Ct. 643, 85 L.Ed. 971, and Burford v. Sun Oil Co., 1943, 319 U.S. 315, 318, 324–327, 63 S.Ct. 1098, 87 L.Ed. 1424, in which it had held that the principle of comity between the state and federal sovereignties required a federal court to abstain from deciding difficult or unresolved questions of state law. Before *Dombrowski,* the abstention doctrine had been applied even to civil rights cases, and for that matter even to those involving first amendment freedoms that might be chilled. *See, e. g.,* Cleary v. Bolger, 1963, 371 U.S. 392, 83 S.Ct. 385, 9 L.Ed.2d 390; Harrison v. N.A.A.C.P., 1959, 360 U.S. 167, 79 S.Ct. 1025, 3 L.Ed.2d 1152; Douglas v. City of Jeanette, 1943, 319 U.S. 157, 63 S.Ct. 877, 87 L.Ed. 1324. Thus although *Dombrowski* did not decide the § 2283 question with which we are faced, it furnishes our starting point because it indicates that the immediate vindication of first amendment rights clearly and actually abridged by illegal state action may supersede the principle of comity between the federal and state judicial systems.

Shortly after its decision in *Dombrowski,* the Supreme Court considered an appeal in which injunctive relief was requested against a state criminal prosecution that, unlike the prosecution in *Dombrowski,* had already begun. Cameron v. Johnson, 1965, 381 U.S. 741, 85 S.Ct. 1751, 14 L.Ed.2d 715. The Court remanded the case in a brief per curiam opinion with directions as follows: "[T]he District Court should first consider whether 28 U.S.C. § 2283 (1958 ed.) bars a federal injunction in this case, see 380 U.S. at 484, n. 2, 85 S.Ct. at 1119. If § 2283 is not a bar, the court should then determine whether relief is proper in light of the criteria set forth in *Dombrowski."* The district court held that § 2283 *was* a bar to the

enjoining of a suit that had already been filed, and that since the prosecutions were undertaken for valid purposes under a valid statute no relief could be granted in any event. The Supreme Court affirmed this decision on the basis of the finding that *Dombrowski* relief could not be granted in light of the facts of the case. Cameron v. Johnson, 1968, 390 U.S. 611, 88 S.Ct. 1335, 20 L.Ed. 2d 182, affirming S.D.Miss., 1966, 262 F.Supp. 873. Thus the Supreme Court has not yet decided the question whether § 2283 is a bar to injunctive relief in meritorious *Dombrowski* cases when suit has already begun. Moreover, the decisions of the lower courts are split. *Compare, e. g.*, Baines v. City of Danville, 4th Cir. 1964, 337 F.2d 579, cert. denied, 1965, 381 U.S. 939, 85 S.Ct. 1772, 14 L.Ed.2d 702 and Goss v. Illinois, 7th Cir. 1963, 312 F.2d 257 (holding that 2283 *is* a bar) with Cooper v. Hutchinson, 3d Cir. 1950, 184 F.2d 119 and Machesky v. Bizzell, *supra* (holding that 2283 is *not* a bar).

■ Despite the disagreement of the circuits on this issue, however, the decisions of this Circuit, taken alone, furnish a clearer guide. They indicate that 2283 is an enactment of the principle of comity and that its prohibitions may be overcome by a showing of *Dombrowski* facts even though a state proceeding is under way. In Dilworth v. Riner, 5th Cir. 1965, 343 F.2d 226, for example, the plaintiffs requested a temporary restraining order against a state criminal prosecution that had already been brought against them under a Mississippi breach-of-the-peace statute. They had refused to leave a section of a restaurant that the management had foreclosed to Negroes. This Court held that the prosecution, which had no prospect of succeeding since punishment for the plaintiff's activities was precluded by the Civil Rights Act of 1964, could be enjoined under the remedial provision of the 1964 Act. The basis of the decision was that this remedial provision, which, like § 1983, is a general grant of injunctive power, constituted an "express

exception" to § 2283 even though it did not refer to that statute in terms, because otherwise the remedy it afforded would be ineffective to protect the rights it was designed to protect. Although the Court thus took a different course than we take here, it also relied upon, and emphasized, the comity nature of 2283. Dilworth v. Riner, *supra*, 343 F.2d at 231 and n. 3; *cf*. Beal v. Waltz, 5th Cir. 1962, 309 F.2d 721.

More recently, in Machesky v. Bizzell, *supra*, 414 F.2d 283, this Court considered a request for § 1983 injunctive relief against a state court order prohibiting the plaintiffs from performing numerous activities related to picketing and demonstrations. This Court found that the state court's order was overly broad and that the chilling effect on first amendment rights justified *Dombrowski* relief. It held, furthermore, that 2283 was not a bar. It found that § 2283 was to be interpreted with reference to the judicial doctrine of comity because it is a legislative enactment of that doctrine, and that it was therefore non-jurisdictional. The Court concluded that § 2283 had to "give way in those extraordinary cases where the federal injunction is necessary to vindicate clear First Amendment rights." As we have already stated, the Court found that in so holding it did not even have to consider whether 1983 constituted an "express exception" to the anti-injunction statute, because the comity basis of 2283 by itself would allow exceptions under *Dombrowski* facts. Machesky v. Bizzell, *supra*, 414 F.2d at 287.

B. *Section 2283 as Applied to a Pending Criminal Prosecution Affecting First Amendment Rights*

■ Of course, this Court's holding in *Machesky* is not fully controlling of the case before us now. The state proceeding in *Machesky* was a civil suit, and it resulted in an order that, like the statute in *Dombrowski*, was unconstitutional on its face. An allegedly unconstitutional criminal prosecution under a valid statute, such as the suit sought

to be enjoined in this case, presents different questions of comity because the federal courts have always been reluctant to interfere in state criminal matters. *See* Stefanelli v. Minard, 1951, 342 U.S. 117, 72 S.Ct. 118, 96 L.Ed. 138; Douglas v. City of Jeanette, 1943, 319 U.S. 157, 63 S.Ct. 877, 87 L.Ed. 1324. However, we conclude that in the context of first amendment rights under § 1983 and *Dombrowski*, § 2283 cannot be considered an absolute bar to the type of relief here requested, even though it is requested against a pending criminal prosecution.

First, the comity aspect of § 2283 that this Court relied upon in *Machesky* is so generally recognized and has been given such broad effect that we cannot believe that it does not extend to pending criminal proceedings as well. *See, e. g.*, Smith v. Apple, 1924, 264 U.S. 274, 44 S.Ct. 311, 68 L.Ed. 678; Studebaker Corp. v. Gittlin, 2d Cir. 1966, 360 F.2d 692, 698. In Landry v. Daley, N.D.Ill., 1968, 288 F.Supp. 200, a federal district court in fact relied on the comity nature of § 2283 to enjoin a pending criminal prosecution. In Carmichael v. Allen, N.D.Ga., 1967, 267 F.Supp. 985, a three-judge district court enjoined pending criminal prosecutions on a showing of *Dombrowski* facts without discussing the effect of § 2283. And even in Baines v. City of Danville, 4th Cir. 1964, 337 F.2d 579, 593, which conflicts with this Court's holding in *Machesky* and which is the leading case limiting the application of *Dombrowski* relief, the Fourth Circuit recognized that:

> Since the statute was fathered by the principles of comity, it has been held that the statute should be read in the light of those principles and, though absolute in its terms, is inapplicable in extraordinary cases in which an injunction against state court proceedings is the only means of avoiding grave and irreparable injury. In our view, the congressional command ought to be ignored only in the face of the most compelling reasons, but we have certainly been told by the

Supreme Court that in those circumstances it may be disregarded, for its parentage discloses that it was not intended to be as absolute as it sounds.

In summary, § 2283 cannot be considered a bar whenever injunctive relief is the only way to avoid "grave and irreparable injury," whatever the form of the state proceeding that threatens the injury. *Dombrowski* indicates that a severe chilling effect on the exercise of first amendment freedoms constitutes sufficient irreparable injury, in and of itself, to supersede comity:

> But the allegations in this complaint depict a situation in which defense of the State's criminal prosecution will not assure adequate vindication of constitutional rights. They suggest that a substantial loss or impairment of freedoms of expression will occur if appellants must await the state court's disposition and ultimate review in this Court of any adverse determination. These allegations, if true, clearly show irreparable injury.

Dombrowski v. Pfister, *supra*, 380 U.S. at 485–486, 85 S.Ct. at 1120. Indeed, the court in *Baines* indicated that a different question would have been presented to it had extraordinary facts such as bad faith use of the challenged ordinance been present. *See* Baines v. City of Danville, *supra*, 337 F.2d at 593–595. Moreover, the *Baines* court's reference to misuse of the ordinance as justifying the issuance of an injunction was expressly framed in the context of persons "already involved in pending criminal proceedings and others who might be expected to flaunt the challenged law in order to obtain an adjudication of their rights."

Second, we agree with appellants that the important remedy § 1983 provides under *Dombrowski* cannot reasonably be interpreted as applying only to those rare and fortuitous cases in which the aggrieved parties are somehow warned of prosecution in advance and are able to file their suit before it begins. To so hold would make this remedy, which

should depend on the need for immediate relief as considered against the principle of comity, depend rather on a race to the courthouse. The purpose of the remedy created by § 1983, as evidenced by its legislative history and as interpreted in *Dombrowski,* is thus a proper consideration in our determination whether the comity principle can be overcome, even though we do not consider whether § 1983 is an express exception to § 2283. Section 1983 is a broad provision, purporting to give relief against every person who under color of law deprives a citizen of his rights under the federal Constitution and laws, regardless of the instrumentality the person uses. Its legislative history establishes that both its supporters and its opponents regarded it as authorizing the federal courts to enjoin state court actions, for they supported or opposed it for this reason. *See* Note, The Dombrowski Remedy— Federal Injunctions Against State Court Proceedings Violative of Constitutional Rights, 21 Rutgers L.Rev. 109–12 & nn. 107–14 (1967). It seems clear that this injunctive power under § 1983 must extend particularly to criminal proceedings, since these are the instrumentalities that lend themselves most easily to the denial of civil rights. *See* Sobol v. Perez, E.D.La., 1968, 289 F.Supp. 392. In other words, the power of the federal courts to enjoin pending state criminal proceedings that deny civil rights is an essential part of the remedy provided by § 1983, at least in those cases in which the proceeding *itself* effects the denial. For if federal jurisdiction did not exist in this instance, state officials disposed to suppress speech could easily do so by bringing oppressive criminal actions pursuant to valid statutes rather than by enacting invalid statutes or using other parts of the state legal machinery, and § 1983 would give no effective relief unless they happened to warn their victims in advance. In *Dombrowski* and cases of its nature, the substance of the complaint is exactly this: that state officials are using or threatening to use ·prosecutions, *regardless of their outcome,*

as instrumentalities for the suppression of speech. Under these exceptional circumstances, and only under these circumstances, the preservation of the remedy created by § 1983 becomes inconsistent with the policy behind § 2283, and the prosecutions themselves may become the subjects of *Dombrowski* injunctions.

When a significant chilling effect on free speech is created by a bad-faith prosecution, the prosecution will thus as a matter of law cause irreparable injury regardless of its outcome, and the federal courts cannot abstain from issuing an injunction. Speech is an evanescent thing. To be effective it must be timely. And that, in essence, is why a mere prosecution may itself destroy it and why the "strong medicine" of *Dombrowski* is available to save it. The delicate nature of the freedom of speech becomes even more relevant in light of the fact that the prohibition of § 2283 has been held to give way when a "compelling national interest" is at stake in a state proceeding. Leiter Minerals, Inc. v. United States, 1957, 352 U.S. 220, 77 S.Ct. 287, 1 L.Ed.2d 267; United States v. Wood, 5th Cir. 1961, 295 F.2d 772. In *Leiter Minerals* and *Wood* it was the United States itself that sought the injunction, but the principle has been applied similarly in proper cases litigated by private parties. *See* Studebaker Corp. v. Gittlin, *supra,* 360 F.2d 692; *cf.* Sobol v. Perez, *supra,* 289 F.Supp. 392. If there is any right, asserted by private parties, the preservation of which amounts to a compelling national interest, it is the freedom of speech. *See* Red Lion Broadcasting Co. v. FCC, 1969, 395 U.S. 367, 89 S.Ct. 1794, 1807, 23 L.Ed.2d 371; Time, Inc. v. Hill, 385 U.S. 374, 389, 87 S.Ct. 534, 17 L.Ed.2d 456; Brennan, The Supreme Court and the Meikeljohn Interpretation of the First Amendment, 79 Harv.L.Rev. 1 (1965). Indeed, the litigation involved in a major first-amendment case concerns compelling national interests in a fuller sense than did even *Leiter Minerals,* where the national interest was

bottomed on the fact that the United States was a party. *See* Machesky v. Bizzell, *supra*, 414 F.2d at 286, 287. Although we need not look at the content of the speech sought to be protected in order to find the national interest in its preservation, we note that the appellants' coverage of the District Attorney's investigation in this case is an example of the kind of speech in which the national interest is most compelling. *See* A. Meikeljohn, Free Speech and Its Relation to Self Government, at 1–3 (1953).

▮▮ Finally, we note that in cases where a person threatened by a badfaith prosecution that suppresses first amendment freedoms must defend the suit in order to vindicate his rights, he has no adequate remedy at law, and the assumption underlying the principle of comity, which is that state courts can adequately protect federal rights, consequently disappears. Thus the Court in Douglas v. City of Jeanette, *supra*, 319 U.S. at 164, 166, 63 S.Ct. at 881–882, bottomed its denial of an injunction against a threatened criminal prosecution on a "want of equity in the cause" which it explained as follows:

It does not appear from the record that petitioners have been threatened with any injury other than that incidental to every criminal proceeding brought lawfully and in good faith, or that a federal court of equity by withdrawing the determination of guilt from the state courts could rightly afford petitioners any protection which they could not secure by prompt trial and appeal pursued to this Court.

When, however, the allegation upon which an injunction suit is based is that the state proceeding *itself* creates a chilling effect on speech because the state's legal machinery is being used in bad faith, it is precisely this assumption that is challenged, and to rely upon comity is to beg the question. The justification for comity disappears if the allegation is proved true, and allowing the state to continue will defeat policies that,

in such cases, are more important than comity. Furthermore, this order of priorities holds true even in a criminal prosecution that has already begun. *See* Dilworth v. Riner, 5th Cir. 1965, 343 F.2d 266 (injunction under the Civil Rights Act of 1964); Carmichael v. Allen, N.D.Ga., 1965, 267 F.Supp. 985; Landry v. Daley, N.D.Ill., 1968, 288 F. Supp. 200. The priority is perhaps most clearly and succinctly indicated in Hulett v. Julian, M.D.Ala., 1966, 250 F.Supp. 208, 209, in which a three-judge district court stated the principle that "judicial comity and its statutory counterpart, 28 U.S.C.A. § 2283, bar this Court from enjoining the defendant Justice of the Peace if the plaintiff has any adequate remedy under State law," but subsequently had no difficulty in holding that the injunction should issue after it had concluded that the plaintiff had no adequate remedy under state law because the Justice of the Peace who was to try him was vested by Alabama law with a financial interest in the outcome of the case.

C. *Limitations on Disregard of the Comity Principle*

▮ From the foregoing, the conclusion follows that § 2283 is not a bar to injunctive relief against those pending criminal cases in which it is alleged and the facts indicate that the prosecution is brought in bad faith with the purpose and effect of suppressing speech.

▮ In so deciding, we recognize that by enacting § 2283 "Congress made clear beyond cavil that the prohibition is not to be whittled away by judicial improvisation." Amalgamated Clothing Workers v. Richman Bros. Co., 1955, 348 U.S. 511, 75 S.Ct. 452, 99 L.Ed. 600. There is a clear basis for the subordination of the comity principle to the protection of first amendment rights in exceptional cases, and this basis is to be found in the nature of comity, the remedy provided by § 1983, and the cases that establish the overriding policy for vindicating first amendment rights immediately. Such cases as Stefanelli v.

Minard, 1951, 342 U.S. 117, 72 S.Ct. 118, 96 L.Ed. 138; Cato v. Georgia, N.D.Ga., 1969, 302 F.Supp. 1143; and Shaw v. Garrison, E.D.La., 1968, 293 F.Supp. 937, present an entirely different problem from this case, since they did not concern the use of prosecutions for the purpose or with the effect of suppressing speech. These cases fall within the dictum of the Supreme Court in *Amalgamated Clothing Workers*. They may conceivably present civil rights violations that give rise to causes of action for damages or similar relief under § 1983, but they do not justify the use of the federal injunction because the probability of irreparable injury does not measure up to *Dombrowski* standards. In *Stefanelli,* for example, the request for injunctive relief was based on plaintiff's claim that his privacy was invaded by the use at his trial of evidence obtained in an illegal search and seizure. The Supreme Court declined to exercise jurisdiction because it found that these facts did not show a threat of irreparable injury. *Cato,* similarly, was a search-and-seizure case. The court stated that: "We began with the proposition that the state prosecutions involved are run-of-mine gambling cases. We do not have a situation involving First Amendment public rights such as free speech or debate which are in danger of being chilled by state activity." Cato v. Georgia, *supra,* 302 F.2d at 1145. And in *Shaw,* a request for an injunction against a murder prosecution allegedly brought in bad faith, the court based its denial of relief on a finding that: "It is clear that the prosecution was not instituted for the purpose of discouraging the plaintiff in the exercise of his First Amendment rights. Accordingly, we hold that plaintiff has failed to bring his case within the ambit of the *Dombrowski* decision." Shaw v. Garrison, *supra,* 293 F.Supp. at 950. In all of these cases, the basis of the decision is that the *prosecution* itself, as distinguished from a possible *conviction* and punishment, is not a deprivation of right comparable to that caused by the chilling effect involved in *Dombrowski,* and that any claim the plaintiffs have to injunctive relief is barred by comity or by § 2283.

Thus we emphasize that our decision is in the context of first amendment rights only. Furthermore, we limit our decision in two other ways. First, we consider only the case before us, that is the case in which a criminal prosecution has "begun" only in a technical sense with the filing of an information or indictment, and not the case in which trial proceedings are under way. Second, we consider only the case in which it appears that, if first amendment rights are in jeopardy, no other equally effective protection can be had for them than resort to the federal injunction. For if a criminal trial is under way, or if a less severe remedy than a federal injunction is available and will be fully effective, the considerations of comity behind § 2283 may be different. *Cf.* Stefanelli v. Minard, *supra,* 342 U.S. at 117, 72 S.Ct. at 118.

## II. THE APPROPRIATENESS OF SUMMARY JUDGMENT IN THIS CASE

We come now to the second issue raised by this case: whether the district court properly found that, even if the suit had not been barred by § 2283 the District Attorney would nonetheless have been entitled to summary judgment because the facts pleaded would not have entitled appellants to *Dombrowski* relief. We note that the District Attorney, who was the moving party and whose motion for summary judgment was granted, did not file affidavits supporting his motion. Under these circumstances, Fed.R.Civ.P. 56(c) sets the standard for determining whether summary judgment is proper: "The judgment sought shall be rendered forthwith if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the

moving party is entitled to a judgment as a matter of law."

We hold that the case at bar was not a proper one for summary judgment. It is almost axiomatic that on motion for summary judgment the moving party has the burden of proving that no genuine issue of fact exists and that he is entitled to judgment as a matter of law, even though his opponent may have the burden of proving the facts at trial. *See* Dawkins v. Green, 5th Cir. 1969, 412 F.2d 644, at 646. This is so even if the court doubts that the opposing party will be able to prevail on disputed issues of fact. United Pacific Ins. Co. v. United States ex rel. Mississippi Valley Equip. Co., 8th Cir. 1961, 296 F.2d 160. The truth of the factual allegations in the appellants' properly pleaded complaint must be assumed, and therefore the court's only task is to decide whether these allegations, if proved, could entitle the appellants to relief under the law. As *Dombrowski* and its progeny show, two elements must be present before an applicant can be entitled to relief: (1) a bad-faith use of the state's legal machinery with the purpose of inhibiting the exercise of the right of free speech (or, alternatively, the existence of a statute unconstitutional on its face affecting free speech) and (2) a probability of irreparable injury, which is established if there is a showing of a significant chilling effect on speech that cannot be avoided by state court adjudication. Dombrowski v. Pfister, *supra*, 380 U.S. at 485–486, 489–490, 85 S.Ct. at 1120–1123; Cameron v. Johnson, 390 U.S. at 619–620, 88 S.Ct. at 1339–1340; *cf.* Zwickler v. Koota, 1967, 389 U.S. 241, 88 S.Ct. 391, 19 L.Ed.2d 444.

This case is similar to that decided by this Court in Dawkins v. Green, *supra*, 412 F.2d 644. In *Dawkins* the plaintiffs sought injunctive relief against a pending state criminal prosecution, as do appellants here. They alleged that the defendants acted in bad faith in prosecuting them. They also alleged specific facts which, if proved, would have tended to demonstrate the existence of a chilling effect on speech and therefore to establish the jurisdiction of the Court. Consequently, this Court reversed the district court's grant of summary judgment for the defendants and stated: "The District Court is directed to hold an evidentiary hearing to determine if appellants can prove their contentions within the context of Dombrowski v. Pfister, 380 U.S. 479, 85 S.Ct. 1116, 14 L.Ed.2d 22 (1965), and its progeny." Furthermore we find it significant that in Sobol v. Perez, E.D.La.1968, 289 F. Supp. 392, a three-judge district court enjoined a Louisiana district attorney from prosecuting a pending criminal suit on the basis of a finding that "this was an unlawful prosecution which was undertaken for purposes of such harassment, which served no legitimate interest of the State, for which no adequate remedy at law exists in the state courts, and which causes irreparable injury to * * * Negroes in need of representation in civil rights cases." Except for the source of the irreparable injury, which was lack of representation for civil rights workers rather than inability to report a news event, the court's factual conclusions closely resemble appellants' allegations here.

Appellants have alleged facts that, if proved, could entitle them to relief under these cases. They offer to show that the prosecution is entirely without basis, that it is the product of personal rancor of the District Attorney against them, that it is brought against them because of their activities, and that the District Attorney knows the prosecution to be without basis and has suppressed evidence tending to show the charges false. In summation of these facts, they allege that the District Attorney has brought the prosecution in bad faith. They also allege, and offer affidavits to prove, that their own coverage of the District Attorney's investigation, as well as that of other major news sources with national circulation, will be inhibited by the prosecution of this suit. The investigation, as appellants point out, raises ques-

tions of great public moment about an event of worldwide significance and casts doubt on the integrity of such important persons and agencies as the former Chief Justice of the United States, the Central Intelligence Agency, and the Federal Bureau of Investigation. By these factual allegations, appellants have offered to show a significant chilling effect on speech sufficient to cause irreparable injury if a bad-faith suit is prosecuted. We recognize that appellants will have difficulty in proving these allegations, but they are well pleaded and sworn, and on motion for summary judgment we must accept them as true.

The burden of proof appellants must sustain in order to be entitled to relief is, certainly, a heavy one. Mr. Justice Fortas, in his opinion dissenting to the denial of relief in *Cameron,* characterized this burden as follows:

> *Dombrowski* is strong medicine. It involves interposition of federal power at the threshold stage of the administration of state criminal laws. *Dombrowski's* remedy is justified only when First Amendment rights, which are basic to our freedom, are imperiled by calculated, deliberate state assault. And those who seek federal intervention bear a heavy burden to show that the State, in prosecuting them, is not engaged in use of its police power for legitimate ends, but is deliberately invoking it to harass or suppress First Amendment rights. *Dombrowski* should never be invoked when the State is, in substance and truth, engaged in the enforcement of valid criminal laws. Ordinarily, the presumption that the State's motive was law enforcement and not interference with speech or assembly will carry the day.

In this case, we hold only that appellants are entitled to attempt to prove that the "presumption of legitimate law enforcement" should not carry the day.

In so holding we do not hold that summary judgment is improper in all cases

in which plaintiffs request *Dombrowski* relief. Indeed, we are concerned, as was the district court, lest "every state defendant might have a go at the game" and win delays and exposition of the state's case merely by alleging that the prosecution against him is being brought in bad faith and that his first amendment rights are being chilled. In such a case, where there is an absence of specific allegations showing *Dombrowski* circumstances, it may well be that there will be "no genuine issue of fact" raised by the pleadings and that summary judgment is proper. In the case before us, however, we do not find that a reluctance to "open the floodgates" of litigation would justify judgment without a hearing of appellants' case. In the first place, as we have already held, the appellants' pleadings, *if fully proved,* would state a cause of action under *Dombrowski.* In the second place, the cases themselves demonstrate that the courts have been able to distinguish, with surprising clarity for so difficult an area of the law, those cases in which the *Dombrowski* requirements are pleaded in insufficient terms or are not supported by the facts. See Stefanelli v. Minard, 1951, 352 U.S. 117, 72 S.Ct. 118, 96 L.Ed.2d 138; Cato v. Georgia, N.D.Ga.1969, 302 F.Supp. 1143 and Shaw v. Garrison, E.D.La.1968, 293 F.Supp. 937. In *Shaw,* in fact, the court granted summary judgment. And as another example, in Wilson v. Simon, 299 F.Supp. 305 (N.D.Ill., April 30, 1969), a federal district court considered a request for an injunction against a state disorderly conduct prosecution but denied it without a hearing. The complaint alleged that the plaintiff had been falsely arrested, that she had lawfully resisted the arrest, that the disorderly conduct prosecution was based upon her lawful resistance, and that therefore the prosecution was in bad faith and chilled her first amendment rights. The court agreed that the complaint stated a cause of action under § 1983 but held *Dombrowski* relief improper. This holding was based in part on a conclusion that § 2283 barred the relief prayed for, but

the court also based its holding on the absence of a genuine fact issue concerning the alleged chilling of first amendment rights:

> There is a basic distinction between the facts in this case and those in Landry and the cases cited therein, particularly Dombrowski v. Pfister, 380 U.S. 479, 85 S.Ct. 1116, 14 L.Ed. 2d 22 (1965); Cameron v. Johnson, 381 U.S. 741, 85 S.Ct. 1751, 14 L.Ed. 2d 715 (1965) and 390 U.S. 611, 88 S.Ct. 1335, 20 L.Ed.2d 182 (1968); and Zwickler v. Koota, 389 U.S. 241, 88 S.Ct. 391, 19 L.Ed.2d 444 (1967). In all of those cases the parties seeking injunctive relief were engaged in organized activities relating directly to free speech. There was also an allegation that the prosecution sought to be enjoined was part of an unconstitutional scheme illegally to regulate or otherwise impinge on their freedom of expression. * * *

> "In prior cases where injunctive relief was granted there was much more at stake than the liberty of a single defendant in a state court proceeding. On the contrary, in those cases there was a strong suggestion that the prosecution carried with it a threat of future arrests of the plaintiffs if they persisted in their First Amendment activities and considerable evidence that the prosecution was intended to have a deterrent effect on others who were engaged in similar activities. These collateral suppressive effects generally weighed more heavily in the court's consideration than the relatively minor prosecutions which were enjoined.

Wilson v. Simon, *supra*, at 309. In Dade County Classroom Teachers' Ass'n. v. Nathan, 5th Cir. 1969, 413 F.2d 1005, at 1006, this Court cited Wilson v. Simon in holding that: "In *Dombrowski* and *Zwickler* the parties seeking an injunction were engaged in activities relating directly to free speech and the allegation was made that the prosecution was an unconstitutional scheme to impinge on

their freedom of expression. We have nothing of the kind here."

The distinction between *Wilson* or *Dade County* and the case at bar is evident on the face of the pleadings. Here appellants do not rely upon a mere conclusion that their first amendment rights are being chilled because of a violation of some other, unrelated civil right, but they allege specific facts that, if proved, would support the conclusion.

Reversed and remanded.